# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: ) | Chapter 11 |
| ) | |
| DISTRIBUTED ENERGY SYSTEMS CORP., ) | Case No. 08-11101(KG) |
| a Delaware corporation, and ) | |
| ) | (Jointly Administered) |
| NORTHERN POWER SYSTEMS, INC., ) | |
| a Delaware Corporation, and ) | |
| ) | |
| Debtors. ) | **Re: Dkt No. 646 & 651** |
| OFFICIAL COMMITTEE OF UNSECURED ) | |
| CREDITORS, on behalf of DISTRIBUTED ) | |
| ENERGY SYSTEMS CORP., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Adv. Pro. No. 08-51120(KG) |
| ) | |
| PERSEUS PARTNERS VII, L.P. ) | |
| ) | |
| Defendant. ) | |

## **MEMORANDUM OPINION**[1]

### I. **INTRODUCTION**

The Chapter 11 cases of Distributed Energy Systems Corp. and affiliated companies (the "Debtors") have been difficult and the results have been disappointing, largely because asset sales did not raise the expected proceeds. Such cases often lead to difficult issues which is the situation the Court now faces. The issues immediately at hand are:

---

[1] This Opinion constitutes the findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052. To the extent any of the following findings of fact are determined to be conclusions of law, they are adopted, and shall be construed and deemed, conclusions of law. To the extent any of the following conclusions of law are determined to be findings of fact, they are adopted, and shall be construed and deemed, as findings of fact.

1.    Was a secured creditor paid in full thereby entitling an investment advisor to a success fee based upon a formula which requires such payment in full?

2.    What impact does the secured creditor's payment in the global settlement have upon the question of whether or not the secured creditor was paid in full?

3.    Does a global settlement resulting in a payment by the secured creditor to unsecured creditors violate the Absolute Priority Rule?

## II. JURISDICTION

The Court's jurisdiction rests upon 28 U.S.C. §§ 157(b)(1) and 1334(b) and (d). The adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B) and (O).

## III. STATEMENT OF FACTS

The Debtors filed for relief under chapter 11 of the Bankruptcy Code on June 4, 2008 (the "Petition Date"). In the course of the bankruptcy case, the Debtors sold their two divisions, Proton and Northern Power Systems ("NPS"). Debtors sold Proton following an auction for $11,083,000, and NPS after a separate auction for $17,272,000. The Court approved both sales. The issues at hand relate indirectly to aspects of those sales.

Prior to filing, the Debtors and Perseus Partners VII, L.P. ("Perseus") entered into negotiations regarding a transaction whereby Perseus would provide the Debtors with much needed cash. The nature of this transaction, which was documented in a Securities Purchase

Agreement,[2] dated May 10, 2008, created issues which later arose within the context of these bankruptcy proceedings, *viz.*, whether the Perseus cash infusion constituted an equity investment or a secured loan.

On July 27, 2008, the Court granted the Committee standing to sue Perseus on behalf of the Debtors' estates. See Order, dated July 30, 2008 (D.I. 284). The Committee then filed, on July 31, 2008, in an adversary proceeding a "Complaint for Equitable Recharacterization of Purported Secured Loan as Equity Investment or, in the Alternative, Equitable Subordination" against Perseus. Following extensive settlement negotiations and with the skillful, persistent assistance of the Court's own Judge Shannon who mediated the dispute, Perseus, the Committee and the Debtors reached an agreement whereby the Debtors and the Committee agreed to settle with and release Perseus and all Perseus related entities in exchange for a portion of the proceeds of the sales of Proton and NPS.

Prior to the Petition Date, the Debtors had entered into an agreement, with Allen & Company LLC ("Allen"), engaging them to assist in formulating an overall plan for its corporate and financial development and to advise on a variety of specific transaction proposals, including potential restructuring and/or refinancing of its existing debt with Perseus. See April 9, 2008, Advisory Engagement Letter (the "Allen Agreement").

---

[2] The terms of this agreement were as follows: Perseus was initially to give the Debtors $12.5 million, followed by shareholder approval of a subsequent distribution of $15 million (less the $12.5 million initial distribution). These distributions were to be evidenced by a Senior Secured Convertible Note with a term of 18 months, interest at 12.5%, payable "in-kind" at Debtors' option and secured by all of Debtors' assets.

3

Thereafter, the Debtors and Allen broadened the scope of Allen's services to include sales of assets.

The Debtors retained Allen post-petition as their investment banker/financial advisor, *nunc pro tunc* to the Petition Date, pursuant to an Order (the "Retention Order") entered on June 27, 2008 (D.I. 131). The Retention Order entitled Allen to a monthly advisory fee of $75,000 and possibly to transaction fees based on sales of Proton and NPS.

Allen solicited and obtained the stalking horse bids for the Proton and NPS sales. CB Wind Acquisition, the NPS purchaser, expressed an interest in retaining Allen following the termination of its relationship with the Debtors. Allen's retention, by its terms, terminated upon the closing of the NPS sale on August 15, 2008. One week later, on August 22, 2008, Allen became the financial advisor of CB Wind. Further, on September 4, 2008, two members of Allen became directors of CB Wind.

Allen has received its monthly advisory fees, totaling $300,000 and is requesting, based on its understanding and calculations, an additional $1,984,850 in transaction fees, plus expenses of $41,581. The Committee does not contest the monthly fees, but it has objected to the approval and payment of the transaction fees for reasons described below. Debtors and the Committee concede that Allen fulfilled its obligations under the terms of the Retention Order.

## IV. **DISCUSSION**

### A. **Allen's Final Fee Application**

Allen is seeking approval of its final fee application which includes a monthly advisory fee and a transaction or success fee relating to the sales of Proton and NPS. In addition to $300,000 in monthly advisory fees that it has already received, Allen is requesting $1,984,850 as a transaction fee which it calculated based on the following language in the Retention Order (p. 4):

> a. 20% of the first $1,000,000 of consideration earned from the NPS sale and the Proton sale after Perseus has been paid in full.
>
> b. 25% of the second $1,000,000 of consideration earned from the NPS sale and the Proton sale after Perseus has been paid in full.
>
> c. 35% of the third $1,000,000 of Consideration earned from the NPS sale and the Proton sale after Perseus has been paid in full.
>
> d. 40% of any amounts earned over $4,000,000 of Consideration earned from the NPS sale and the Proton sale after Perseus has been paid in full.
>
> e. The above transaction fees are subject to a cap of 7% of the consideration received.

The Committee objects to the transaction fee on multiple grounds. First, they argue that one of the conditions precedent to receiving the fee, payment in full of Perseus' claim, was not satisfied and Allen is therefore not entitled to payment of a transaction fee. Pursuant to the Global Settlement Agreement (the approval of which is at issue), Perseus is not

receiving payment in full of its claim. Allen contends that a party's voluntary decision not to receive full payment should not prevent the payment of a fee which is contingent on the full satisfaction of that party's claim.

Second, the Committee asserts that Allen did not adequately disclose all relationships with CB Wind, purchasers of NPS, as required by Federal Rule of Bankruptcy Procedure 2014 and Local Rule 2014-1. Allen contends that its disclosures met the requirements of the Rules, and that there was no conflict as there was no actual overlap in Allen's service to Debtors and now to CB Wind.

Finally, the Committee argues that even if Allen is entitled to their transaction fee under the Retention Order, this Court should not enforce the agreement by virtue of §328(a) of the Bankruptcy Code because conditions have changed since the parties entered into the Allen Agreement. Allen argues that the changed conditions presented in this case are not sufficient for this Court to invoke §328(a) and deny Allen fees to which it is legally entitled.

The resolution of the transaction fee issue is straightforward and certain. Perseus did not receive payment in full and therefore Allen is not entitled to a transaction fee. The release and withdrawal of claim language in the Settlement Agreement[3] does not change the

---

[3] The Settlement Agreement provides:

> Withdrawal of Perseus Claim. In exchange for Debtors' payment of the Settlement Payment, any and all remaining unpaid claims Perseus has against the Debtors shall be deemed permanently satisfied and released with prejudice, and, except as provided in this Agreement, Perseus hereby waives the right to, and shall not receive, further distributions or dividends in these proceedings.

hard fact that Perseus did not voluntarily accept less than payment in full to generate a settlement. It is clear and unrebutted that Perseus' unpaid balance was $1.875 million. Against that balance due, the Settlement Agreement provided that Debtors would pay Perseus the sum of $961,200, which Perseus agreed to distribute as follows:

| Perseus | $513,000 |
|---|---|
| Committee for Unsecured Creditors | $250,000 |
| Committee for prosecuting the objection to Allen's fees | $109,000 |
| Other payments | $98,200 |

The "payment in full" condition for Allen's transaction fee was not met. To be clear, had Perseus received all that Debtors owed it and made the settlement payment to the Committee and others, the Court would have deemed the "payment in full" condition to have been satisfied. However, according to the Committee's unchallenged assertion, Perseus received $900,000 less than the Debtors owed it.

The Committee also argued that Bankruptcy Code Section 328(a) provides the Court with a discretionary basis to disallow the transaction fee. Section 328(a) provides that:

> ...the court may allow compensation different, from the compensation provided under such terms and conditions after the conclusion of employment, if such terms and conditions prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions.

The Court agrees that the facts and circumstances of this case would, if necessary to decide, call Section 328(a) into play. The distress which our economy is suffering began in large

part shortly after Debtors hired Allen. The economic crisis was unforeseeable and clearly diminished the value of Proton and NPS. As a result, payment of the transaction fee would be highly inequitable and improper.

The Court's finding that the underpayment to Perseus negates the payment to Allen of a transaction fee ends the Court's inquiry. Section 328(a) provides an alternate basis to deny approval of the transaction fee. Nonetheless, the Court wants to address briefly the Committee's claim that Allen violated Bankruptcy Rule 2014 by not adequately disclosing a relationship with CB Wind. The Court is satisfied beyond any doubt that Allen complied with Rule 2014. Allen promptly filed a supplemental declaration disclosing CB Wind's interest in hiring Allen to provide investment banking services. Furthermore, when Allen entered into an agency agreement with CB Wind's parent company, its services to Debtor had terminated and, therefore, it no longer had a duty to disclose its retention.[4] It is important and only fair for the Court to clear Allen of any alleged impropriety.

## B. Settlement Agreement

Also before the Court is a motion to approve a settlement by and between the Debtors, Perseus, and the Official Committee of Unsecured Creditors (the "Committee"). The Court will approve the settlement over the objections discussed below.

---

[4] Allen's engagement with Debtors terminated on August 15, 2008. CB Wind's parent company hired Allen on August 22, 2008.

### 1. The Absolute Priority Rule

Under the Settlement Agreement, Perseus agreed to distribute a portion of the proceeds of the Proton and NPS sales to the Debtors' general unsecured creditors ("GUCs") in exchange for voluntary dismissal of the adversary proceeding and other releases from the Committee and the Debtors. Three parties objected to the approval of the settlement based on the Absolute Priority Rule.[5]

The Absolute Priority Rule is derived from sections 507, 726, and 1129 of the Bankruptcy Code. It commands that senior creditors must be satisfied in full before junior creditors can receive a distribution of estate property. The objectors argue that because under the Settlement Agreement the GUCs will receive a distribution before other, higher priority creditors, it violates the Absolute Priority Rule. This assertion, however, is misplaced because the Absolute Priority Rule only applies under circumstances where the distribution is property of the estate. In this case, the GUCs will receive payment from the proceeds of the sale of Perseus' collateral,[6] not property of the estate. Therefore, the Absolute Priority Rule is not implicated, and the Court will overrule the objections to the motion for approval on these grounds.

---

[5] The objectors include Allen, B.H. Cherry, LLC, and the Office of the United States Trustee.

[6] At this time, Perseus holds a claim which is secured by all of the Debtors' assets. Whether that security interest is valid (or should be recharacterized) is the subject of the litigation that the settlement at issue seeks to resolve. No other party, including the objectors, has challenged the validity of the liens. Therefore, Proton and NPS were the collateral of Perseus and the proceeds of the sales are its property.

Support for this determination is found in other decisions rendered in this jurisdiction. In *In re TSIC, Inc.*, 393 BR. 71, 77 (Bankr. D. Del. 2008), this Court approved a settlement under comparable circumstances over nearly identical objections. Similarly, the Court has approved settlements where junior creditors were given distributions by senior creditors ahead of other, higher priority claimants, when the funds at issue would otherwise not have been available to the debtors' estate. *See In re World Health Alternatives, Inc.,* 344 BR. 291 (Bankr. D. Del. 2006); *In re PSA Successor Corp.*, No. 04-13030 (Bankr. D. Del. 2004).

### 2. Approval of Settlements

Further, this Court finds that the settlement is fair and equitable under the test set out in *Protective Comm. For Indep. Stockholders of TMT Trailer Ferry*, 390 U.S. 414, 424 (1968) which requires a bankruptcy court to consider: (1) the probability of success in litigation; (2) the estimate of the complexity of the litigation involved and the expense, inconvenience and delay necessarily attending it; (3) the likely difficulties in collecting on any judgment; and (4) all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise. Careful consideration of these factors leads the Court to its determination to approve the settlement.

## VI. **CONCLUSION**

For the foregoing reasons, the Court (1) denies the award of the transaction fee portion of Allen's Final Fee Application while allowing the expenses of $41,581, and (2) will approve the Settlement Agreement. The Court requests the Committee to submit an Order reflecting the ruling on the Allen Final Fee Application, on notice to Debtors and Perseus and with a certification of counsel. The Court will then also enter an Order approving the Settlement Agreement in the form attached to the motion for approval.

Dated: May 18, 2009

                                                  KEVIN GROSS, U.S.B.J.